Argued January 10, modified January 31, rehearing denied February 28, 1928.

# ADA V. SKIFF v. RIDDLE LUMBER CO. et al.

### (263 Pac. 402.)

**Corporations—President and Principal Stockholder Held Bound to Take Greatest Care to Present Correctly Account for Advances Made to Corporation.**

1. President and principal stockholder of corporation *held* bound to take greatest care to present correctly his account for advances which he claimed he had made to the corporation.

**Corporations—Note and Mortgage Given President and Controlling Stockholder for Alleged Advances Made Held Void, Where Account Which He Presented was Excessive.**

2. Note and mortgage given by corporation to its president and controlling stockholder for advances which he alleged he had made *held* void, where the account which he presented was excessive, since, in view of his position, he should have made it his duty to know the correct amount and should be held accountable for using his position to obtain an unconscionable advantage over the corporation and its creditors.

**Corporations—Where Defendant Taking Over Stock was Induced to Indorse Corporation's Note for Amount Greater Than Debt Claimed Due Controlling Stockholder, His Liability on Suit to Foreclose Chattel Mortgage Should be Reduced by Amount of Excess.**

3. Where defendant, who took over corporation stock under settlement agreement between stockholders, was induced to indorse the corporation's note for an excessive amount which plaintiff's assignor, who had been president and controlling stockholder, claimed was due for advances which he had made to the corporation, defendant's liability on suit to foreclose chattel mortgage should be reduced to the sum which the corporation actually owed plaintiff's assignor.

**Corporations—Where Defendant, Who Took Over Corporation Stock Under Agreement, Indorsed Corporation's Note Believing Claims Against Corporation had Been Disclosed, His Liability Should be Reduced by Amount of Concealed Claims.**

4. Where defendant, who took over most of the stock of a corporation under a settlement agreement between the stockholders, was induced to indorse corporation's note in the belief that all claims against the corporation had been disclosed, and where plaintiff's assignor, who was party to such agreement, had concealed certain claims, defendant's liability should be reduced by the amount of the concealed claims.

Lost Instrument—Where Satisfaction of Mortgage Which Plaintiff had Delivered Under Agreement was Lost, Plaintiff Held not Required to Furnish New One.

5. Where satisfaction of mortgage which plaintiff had delivered to defendant's attorney according to agreement under which suit was brought had been lost, plaintiff *held* not required to furnish the defendant a new one.

Compromise and Settlement, 12 **C. J.**, p. 358, n. 33.
Corporations, 14a **C. J.**, p. 119, n. 33, 35.

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.

This is a suit by Ada V. Skiff to foreclose a mortgage for the sum of $2,725.73, executed by the defendant Riddle Lumber Company in favor of Mark S. Skiff and by him assigned to plaintiff. The original mortgage was to secure a note for $5,000 on the property of the company located at Riddle, Oregon. Afterward, by settlement, the amount of the mortgage was reduced from $5,000 to $2,725.73. The plaintiff demanded possession of the chattels mentioned in the mortgage, and, the same having been seized by the sheriff of Douglas County, this suit was commenced to foreclose that mortgage in its modified form. The suit, originally, was against the Riddle Lumber Company, Jennie Calvert, as the holder of another mortgage, James E. Perry, an attaching creditor, and Frank S. Skiff, whose liability grows out of the modification of the note above referred to, he having signed and indorsed said note in its modified form as will be hereinafter more fully explained. The pleading of both the Riddle Lumber Company and Frank S. Skiff contested the foreclosure of both appellant's mortgage and the mortgage of Jennie Calvert, which she sought to foreclose in this same proceeding. The court foreclosed the Jennie Calvert

mortgage.   This is not contested by the appellant and no appeal is taken from that part of the decree by any of the other parties.

The first essential to an understanding of this case is the knowledge of the relationship of the parties to each other.   The plaintiff Ada V. Skiff is the wife of Mark S. Skiff, a dentist in Salem, Oregon, and Mark S. Skiff is a brother of defendant Frank S. Skiff, a dentist in Portland, Oregon.   Jennie Calvert is a sister of the plaintiff Ada V. Skiff.   While this suit was brought by Ada V. Skiff, the controversy is really between Mark S. Skiff of Salem, and the defendant Frank S. Skiff of Portland.

The Riddle Lumber Company was organized as an Oregon corporation in 1922.   Its capital stock consisted of 80 shares of the value of $100 per share. Its corporate record shows that at one time Joe Crahane owned 10 shares of those 80 shares and that Mark S. Skiff had subscribed for the other 70 shares, one of which he caused to be issued to his wife the plaintiff.   Mark S. Skiff became president and his wife became secretary and treasurer of the company, and during all times constituted a majority of the stockholders and a majority of the directors of the company, and held the two principal offices in the defendant corporation.

Modified.   Rehearing Denied.

For appellant there was a brief over the names of *Mr. John T. Long* and *Mr. Walter C. Winslow,* with an oral argument by *Mr. Winslow.*

For respondents Riddle Lumber Co. and Frank S. Skiff there was a brief and oral argument by *Mr. Ray B. Compton.*

For respondent Jennie Calvert there was a brief over the name of *Mr. Ray B. Compton.*

McBRIDE, J.—This seems to be one of those unfortunate cases where everybody connected with the ownership and management of the property in question seems to have lost everything they put into it, and, perhaps, more. We gather from the testimony that the corporation was involved in financial difficulties almost from its inception. After it had been in existence some time, and was much embarrassed by the lack of ready money, Frank S. Skiff was induced to put his money into the concern to the extent of 29 shares of its stock, which he purchased from his brother paying therefor the sum of $2,578, Mark S. Skiff and his wife retaining a majority of the stock; that is to say, they had 41 shares, Frank S. Skiff 29 shares and Joe Crahane 10 shares, Mark S. Skiff being president, Joe Crahane vice-president, and the plaintiff Ada V. Skiff being secretary and treasurer.

The management of the company proved very unsatisfactory to Frank S. Skiff, and, as a result, he bought up all the claims he could secure against the company and procured the company to be sued on these claims for reasons, which are not apparent in the testimony, except that they indicate the feeling that had arisen between the two brothers. While this litigation was pending, a meeting of the stockholders and board of directors was held. There were present all the members of the board of directors, to wit, the Skiffs and Crahane, and all of the stockholders except Frank S. Skiff. At that time Mark S. Skiff contended that he had

advanced $5,000 to the company in addition to the amount of the liability, which was $7,000 for the stock originally purchased by him. After some discussion, it was proposed that the company should issue to Mark S. Skiff a note for the sum of $5,000 to secure him for the alleged advances, and the mortgage to secure this amount is the mortgage referred to in the present proceeding. The resolution to issue the note and mortgage was voted by Mark S. Skiff and his wife, being a majority of the board of directors, and opposed by Crahane the other director. Thereafter, Frank S. Skiff not being satisfied with the arrangement, a very bitter feeling arose between himself and Mark S. Skiff, and, while the suits before mentioned were pending, an attempt was made to settle the matter amicably between the two brothers and Mrs. Skiff. The result of the controversy was that, on the thirty-first day of December, they came to an agreement, which is as follows:

"This agreement made and entered into this 31st day of December, 1923, by and between Mark S. Skiff, hereinafter called party of the first part, and Frank Skiff, hereinafter called party of the second part, Witnesseth: that

"Whereas the parties hereto have had some controversy over the Riddle Lumber Company, a corporation in which both parties have been interested and now for the purpose of settling said controversy

"It is therefore, hereby understood and agreed by and between said parties that for and in consideration of the performance of said parties of the mutual covenants and agreements herein set forth and contained, said controversy is hereby settled by the following terms:

"Party of the first part is to transfer and assign to party of the second part all of the stock held by

said party of the first part or the wife of party of the first part in and to said Riddle Lumber Company.

"Party of the first part is to satisfy all liens and claims and mortgages held by himself or his wife against the Riddle Lumber Company except as hereinafter specified.

"Party of the first part is to turn over to party of the second part all books, records, seal and other property now in his possession belonging to said Riddle Lumber Company.

"Party of the second part agrees that upon the cancellation by W. C. Winslow of the chattel mortgage against the property and plant of the Riddle Lumber Company, said party of the second part will pay to the said W. C. Winslow the sum of $125.00.

"Said party of the second part promises and agrees to pay to said party of the first part the sum of $2,725.73 which shall be paid, $1,000.00 on or before four months from date hereof, and the balance on or before one year from date thereof and said payment shall be evidenced by a promissory note and chattel mortgage upon the plant and property of the Riddle Lumber Company which may be arranged by continuing a chattel mortgage which said party of the first part already holds upon said plant and property and by making the proper credits and endorsements upon said note or by giving a new mortgage by said corporate officers as the parties may desire, but in any event said note is to draw interest at the rate of 6% and said mortgage is to be a second mortgage upon said property and be junior only to the lien and claim of Jennie Calvert who holds a mortgage upon said plant and said party of the second part agrees to satisfy or have satisfied all other claims or liens against said property including what is known as the Miller mortgage or the Albany Iron Works mortgage, including all liens and claims of Joe Crahane or J. D. Winn or any and all other persons having claims or liens against said property.

"It is understood and agreed that party of the first part will have W. C. Winslow satisfy the mortgage upon said plant upon the payment to the W. C. Winslow by the said party of the second part of said sum of $125.00.

"It is further understood and agreed that the judgment of I. Howard Tonkon now controlled by party of the first part will be turned over to the party of the second part and by said party of the second part satisfied.

"It is further understood and agreed that the appeal of the case of J. D. Winn against the Riddle Lumber Company will be dismissed and the judgment of J. D. Winn satisfied and party of the second part agrees to have said judgment satisfied and to relieve from all liability whatsoever Ada V. Skiff the surety on the appeal bond in said matter.

"It is further understood and agreed by and between the parties that the party of the second part will take over said stock in said corporation and protect said corporation from liens and encumbrances and keep said plant owned by said corporation operating so as to protect the lien of party of the first part created by the mortgage herein referred to and keep said concern a going concern until said mortgage is paid.

"It is further understood and agreed that this settlement shall constitute a full and complete settlement of all differences and controversies between the parties hereto, but it is understood that this does not involve or include a settlement for the said party of the first part or one Joe Crahane, said party of the first part assuming full responsibility for whatever settlement he desires to make with said Joe Crahane and

"It is understood and agreed that party of the second part assumes no responsibility with reference to said settlement or matter.

"In witness whereof, the parties hereto have hereunto set their hands and seals this day and date above written.

"MARK S. SKIFF,     (Seal)
"Party of the first part.
"FRANK S. SKIFF,     (Seal)
"Party of the second part.

"Done in the presence of:
"W. C. WINSLOW.
"W. A. ROBBINS."

Each party mentioned in the agreement, to wit, Ada V. Skiff, W. C. Winslow, Mark S. Skiff, Joe Crahane and J. D. Winn signed a separate agreement that they would abide by the foregoing agreement, and indorsed the note for $5,000 as reduced, which note is the subject of this controversy.

Upon suit being brought, the Riddle Lumber Company set up the defense of want of consideration and fraud on the part of Mark S. Skiff and Mrs. Skiff, and also plead that the note and mortgage were *ultra vires,* or not in accordance with the by-laws of the corporation.

Frank S. Skiff claimed that he was defrauded by reason of the fact that the note was without consideration and obtained by misrepresentation of the condition of the company, and by reason of noncompliance, by the plaintiff and her husband, with the terms of the contract as hereinbefore set forth.

In this case, we find the books and accounts of the company from the beginning to be so inaccurate as to be an unsafe guide in regard to the status of the accounts between plaintiff's assignor and the company. The feeling between Mark S. Skiff and his brother Frank S. Skiff had come to the point where bitter animosity seems to have wholly taken the place of brotherly affection and each seems so under the

influence of such feeling of prejudice, that we are disposed to discount many statements made by one against the other in this trial.

1, 2. Instead of recounting in a long opinion the processes by which we have arrived at our conclusion, we will simply state the conclusions arrived at. We find that at the time the alleged mortgage for $5,000 was executed in favor of Mark S. Skiff by the defendant company, he had in various ways advanced to the company the sum of $8,711.24; that there should be offset against this amount the sum of $7,000, the amount of stock subscribed for by him, leaving the sum of $1,711.24 due him at the time of the alleged settlement; that at the time of taking the mortgage for $5,000 he knew, or, by the exercise of reasonable diligence, could have known that the amount of the company's indebtedness to him did not exceed the sum of $1,711.24; and that, as president of the company and actually controlling a majority of the stock, it was his duty to have taken the greatest care in correctly presenting his account to the company, instead of which he used his position to obtain an unconscionable advantage over the company and the other creditors.

The note and mortgage are void as between Mark S. Skiff and the company. It may well be that being unaccustomed to the sawmill business, and conducting it only at long range, he was not informed as to the actual state of the account; but, as before stated, in view of his position as principal stockholder and president, he should have made it his duty to know, and will be held accountable for not knowing at least the amount of his own expenditures on behalf of the company.

3, 4. In the settlement through which Frank S. Skiff was induced to become an indorser to the extent of $2,578, it is only just that the amount should be reduced to $1,711.24, the sum actually due. In addition to this, it is clear to our minds that Frank S. Skiff was induced to believe that all debts, not included in actions already pending, were included in Mark S. Skiff's representations, while, in fact, a claim of $600, and another claim of the Industrial Accident Commission of $117 which the company owed, were pending and unsettled, and were actually known to be so by Mark S. Skiff; but were concealed even from his own attorney until action was commenced thereon. By all these representations, the value of Frank S. Skiff's purchase of the stock and the mill he represented were depreciated by just the amount of the claims. The writer has searched diligently in the books and failed to find any account of the claim for $600 turned over to Frank S. Skiff. If there is such a claim, no one but an expert will ever be able to detect it, and the fact that, after Frank S. Skiff had signed or indorsed the note, but before it had been delivered, his attorney was notified that the Willamette Lumber Company were claiming that such a sum was due, was not sufficient notice for the court to say that he acquiesced in accepting the additional indebtedness. It would be going far to say that these additional amounts, heaped on top of other burdens of the corporation, were the cause of its downfall and of Frank S. Skiff being a loser to the extent of his entire indebtedness. Both brothers were engaged in a business, the details of which they knew nothing, and were managing it from their respective offices through the interposition of other employees, and it is probable that it would have failed in any event;

but it was only fair to Frank S. Skiff that he should have had a fair field in which to make his venture. We think these two items should in equity be deducted from his liability on the note, which would leave his liabilty thereon at $994.24.

5. In this decision we have sought, in view of the complicated condition of accounts between the parties, to be entirely untechnical and to work out an equitable settlement. We are inclined to believe that the weight of testimony is to the effect that the satisfaction of the separate mortgage of Mrs. Ada V. Skiff was actually delivered to Frank S. Skiff's attorney; but was lost or overlooked, and although the plaintiff and his wife refused to furnish the defendant a new one, while a very small and contemptible action, it was not legally required of them.

The action of the Circuit Court, dismissing the suit as to the Riddle Lumber Company, is affirmed. The decree as to Frank S. Skiff is reversed and a judgment will be entered against Frank S. Skiff for the sum of $994.24. Neither party will recover costs.

MODIFIED. REHEARING DENIED.

RAND, C. J., and BELT and ROSSMAN, JJ., concur.